PD-1602-15

PD-1602-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/14/2015 10:26:48 AM
Accepted 12/15/2015 3:47:28 PM
ABEL ACOSTA
CLERK

NO._____

IN THE
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

VERNON TRAVIS III,

FILED IN
COURT OF CRIMINAL APPEALS

December 15, 2015

ABEL ACOSTA, CLERK

Appellant,

VS.

THE STATE OF TEXAS

Appellee,

On the Appellant's petition for discretionary review from
The Fourth Court of Appeals, San Antonio, Texas
Appellate Cause No.04-14-00560-CR

Tried in the 198th Judicial District Court, Kerr County, Texas
Trial Cause No. B13637

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

Respectfully Submitted
Law Offices of Gary F. Churak
Gary F. Churak
State Bar No 04245500
14310 Northbrook Dr. Ste. 210
San Antonio, Texas 78232
210-491-4443
Fax 210-491-4446
E-Mail churaklaw@msn.com

Oral Argument Requested

## CERTIFICATE OF PARTIES, INTERESTED PERSONS, AND COUNSEL

In order that the members of this Court may determine disqualification and recusal under the Texas Rules of Appellate Procedure 15 and 15a, Appellee certifies that the following is a complete list of all parties, attorneys, and other persons who have an interest in the outcome of this proceeding:

| Name of Party | Designation (Appeal/Trial Court) | Counsel |
|---|---|---|
| Vernon Travis III | Appellant/Defendant | Shawn Brown<br>540 S. St. Mary's<br>SanAntonio,Texas78205<br>Trial Counsel |
| | | Brian Orihel<br>540 S. St. Mary's<br>San Antonio, Texas 78205<br>Trial Counsel |
| | | Gary F. Churak<br>Law Offices of<br>Gary F. Churak<br>14310 Northbrook,<br>Ste. 210<br>San Antonio, Texas 78232<br>Appellate Counsel |
| State of Texas | Appellee/State | Scott Monroe<br>District Attorney<br>198th Judicial District<br>402 Clearwater Paseo,<br>Kerrville, Texas 78028<br>Trial Counsel |
| | | Donnie Coleman<br>Assist. District Attorney<br>198th Judicial District<br>402 Clearwater Paseo,<br>Kerrville, Texas 78028<br>Trial Counsel |

Trial Judge                                    Honorable Stephen B. Ables

**REQUEST FOR ORAL ARGUMENT**

    Appellant requests oral argument.


**NOTATIONS AS TO CITATION FORMS**

    Appellant uses the following citation forms:

1. The Reporter record will be referred to as the volume number, then "R" and the page number. (E.g.: 3R12 refers to page 12 of the 3rd volume of the reporter's record.)
2. The clerk's record will be referred to as "C", followed by the bates stamped page number.


## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| CERTIFICATE OF PARTIES, INTERESTED PERSONS, AND COUNSEL . . . . . . . . . . . . . . . . . . . | 1 |
| REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| NOTATIONS AS TO CITATION FORMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . | 2,3 |
| INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4,5 |
| PRELIMINARY STATEMENT-NATURE OF THE CASE . . . . . . . . . . | 6 |
| POINTS OF ERROR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |

Point of Error No.1

The trial court erred in excusing Juror #3 Lee Burns for cause

Point of Error No.2

Whether the Appellant was provided adequate assistance of counsel

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . .     8

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . .     8

     POINT OF ERROR NO.1 . . . . . . . . . . . . . . . . . . . . .     8

     POINT OF EROR NO.2 . . . . . . . . . . . . . . . . . . . .     14

PRAYER AND CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .     15

CERTIFICATE OF COMPLAINCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . .     16

APPENDIX: Court of Appeals Opinion     A

## INDEX OF AUTHORITIES

CASES:                                                                 PAGE

*Allridge v. State, 850 S.W.2d 471 (TexCrApp (1991)* . . . . . . . . . . . . . . . . . . .. 10

*Baldwin v. State, 668 S.W.2d 763 Tex App-Houston {1ˢᵗ Dist.} 1984, no*

*pet*. . . . . . . . . . . . . . . .                                                         12

*Cockrum v. State, 758 S.W. 2d 577 (Tx Cr App 1988).* . . . . . . . . . . . . . . . . . . . . . . .

. . . . .                                                                                    10

*Cooke v. State, 735 S.W.2 928 (Tex. App-Houston {14ᵗʰ Dist} 1987, pet*

*ref'd*. . . . . . . . . . . . . . ..                                                         11

*Hughes v. State, 878 S.W. 2d 142 (Tx Cr App 1993)* . . . . . . . . . . . . . .  .           11

*McMann v. Richardson 262 F3d 336 (5ᵗʰ Cir. 2001), cert denied 535 U.S. 1120*

*(2002)*. . . . . .                                                                           12

*Perkins v. State 812 S.W.2d 326 Tex Crim* . . . . . . . . . . . .                           12

*Powell v. Alabama 287 U.S. 45 (1932)*. . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . . . . . . . 12

*Ruth v. State 522 S.W 2d 517 (Tex Crim App 1975).* . . . . . . . . .  . . . . . . . . . . . . . . . . .           13

*Sanders v. State, 715 S.W. 2d 771 (Tex. App.-Tyler 1986, no pet)*. . . . . . . . . . . . . . . . . . . . . . 12

Standefer v. State, 59 S.W. 3d 177 ( Tx Cr App 2001) . . . . . . . . . . . . . . . . . . . . 10

*State v. Murphy, 56 Wn 2d 761 (Wash 1960)* . . . . . . . . . . . . . . . . . . . . . . . 11

*Strickland v. Washington, 466 U.S. 668 (1984)*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4

*Wood v. State, 18 S.W. 3d 642 (Tex. Crim App. 2000  )* ... ...................... 11


STATUTES:

*U.S Const Amend 6* . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . .11

U.S Const Amend IVX. . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . 11

*TEX Rules Criminal Procedure Art 35.16*    . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

PETITION FOR DICRETIONARY REVIEW

TO THE HONORABLE CRIMINAL COURT OF APPEALS:

## PRELIMINARY STATEMENT OF THE NATURE OF THE CASE

Appellant was indicted on November 4, 2013 for one count of Burglary of a Habitation with intent to commit felony offense of Aggravated Assault with a deadly weapon (C-13). Appellant plead guilty to the offense. (C44-46) (2R124-18-20) After a jury trial, the Appellant was found guilty of the offense of Burglary of a Habitation with intent to commit felony offense of aggravated assault on May 7, 2013 (C-66) The Appellant elected to have the jury access punishment and on May 8, 2013 he was sentenced to 55 years TDC. (C-74). The Appellant appealed the judgment of the 198th District Court of Kerr County, Texas to the Fourth Court of Appeals. On November 10, 2015 the Fourth Court of Appeals in Cause No. 04-14-00560-CR affirmed the judgment of the trial court

## STATEMENT OF POINTS OF ERROR

**POINT OF ERROR NO.1**

The trial court erred in excusing Juror #3 Lee Burns for cause

**POINT OF ERROR NO.2**

The Defendant did not receive adequate assistance of counsel.

6

## STATEMENT OF THE FACTS

Appellant was charged with Burglary of a Habitation with intent to commit felony aggravated assault with a deadly weapon which resulted from an incident which occurred on September 5, 2013 in Kerrville, Texas. (C-13) Juror No. 3 Lee Burns was struck for cause over the objection of Appellant's counsel. (RR2-126) Appellant plead guilty to the offense (CR-44-46) Appellant elected to have the jury assess punishment (CR-48) Appellant was a veteran who had served a tour of duty in Iraq in 2003 (RR4-47 18/19) Appellant was discharged from the military in 2004 (RR4-59 5/7). Appellant stated drinking and doing drugs after his discharge. (RR4-61-62). On September 4, 2013 Appellant began drinking and doing drugs with Big Mike and Scotty. (RR4-70) Big Mike wanted Appellant and Scotty to scare an individual who owed Big Mike money for drugs. RR4-70-71) Big Mike gave Appellant and Scotty the guns. (RR4-75). Appellant was intoxicated when he broke into the residence. (RR4-88 12/13). A video interview of Appellant was made after his arrest. (RR3-52) Appellant was intoxicated at the time of the interview (RR4-91 18/19) This was confirmed by Sheriff Deputy Ledford who took the interview. (RR3-52 4/5). Appellant was diagnosed in April 2014 with PTSD, polysubstance use disorder and drug inducement disturbance (RR3-150 10/11). While Appellant was testifying a Bailiff administered an unknown medication to the Appellant. (RR4-87) Appellant was found guilty by the jury and assessed a sentence of 55 years.

7

## SUMMARY OF THE ARGUMENT

The trial court erred in excusing Juror #3 Lee Burns for cause.

Additionally, Appellant was not provided adequate assistance of counsel.

## *ARGUMENT*

### *ISSUE NO. 1* (RESTATED)

The trial court erred in excusing Juror #3 Lee Burns for cause

During Voir Dire Juror No. 3, Lee Burns was questioned by both State and

Defense counsel in front of presiding Judge Ables.

THE COURT: This is Juror Number 3, Lee Burns.
And they need to ask you a couple of questions at the bench.

PROSPECTIVE JUROR: All right.

MR. MONROE: Mr. Burns, first of all, thank you
for your response and your input out there. I appreciate that
and appreciate the services you have. I want to ask just a
couple of questions trying to get some brutal honesty here and
not that you would want to do anything but that here.
PROSPECTIVE JUROR: I take an oath that is very
serious.

MR. MONROE: If you have a situation where you
were presented with evidence of PTSD, could you ever entertain
a sentence of 99 years?

PROSPECTIVE JUROR: No, sir.

MR. BROWN: Judge, I'm going to object. That's
improper commitment in this case. There is no evidence of
anything specific in this particular case. That's an improper

commitment.

MR. MONROE: Your Honor, our jury has been voir dire ad nauseam on PTSD, and I just asked if he could ever consider that. That's kind of like ignoring an elephant in the room.

MR. BROWN: Judge, the way it should be framed is could you consider it under any circumstances, not limited to one particular issue.

THE COURT: Yeah, it's a -- I don't want anybody to anticipate what's going to happen in this trial, and cannot tell you right now if PTSD will even come in because nobody knows until we start. It is a little bit of a problem because we've talked about it so much it has become the issue. So I'm going to overrule the objection and let you go into it a little bit more because we've had extensive conversation about it, but I want to not warn you Mr. Monroe, but you can't assume that --

PROSPECTIVE JUROR: I understand.

THE COURT: -- the way you think about it or the way anybody else thinks about it or at all it's going to come in.

PROSPECTIVE JUROR: Well, we haven't received any information that there has been a diagnosis or there is any particular thing. However -- and this is probably going to affect more than just me. I know this marine back there who suffered from it. If PTSD is a factor, there is no mention of any option other than a sentence. If the guy has got PTSD, he's got to have treatment so that's another factor that's in the back of the heads of the veterans in the room. Why is there not an option, even if punishment is required, to offer assistance to this guy as well because sometimes, hey, just because we're vets doesn't make us less human. We all make mistakes. We all do bad things from time to time and we all have to pay those consequences. But if

9

you're a veteran and you've got PTSD based on being a veteran, you deserve treatment because you were put where you were not otherwise have been that you otherwise would not have done. He's in service to us, the rest of us, so we owe treatment to him.

MR. BROWN: Judge, I'm going to reurge my objection at this time, Judge, that we're getting into potential facts of the case. There is no facts presented in this. We don't know if there was six or ten people shot at, one person shot at, nobody shot at, PTSD or not, and I think we're getting into --

THE COURT: Do you have any other questions?

MR. MONROE: Well, and I don't have a clue on what's going to be brought out. I don't have a clue.

PROSPECTIVE JUROR: I understand.

MR. MONROE: I know what the State will bring out, but I don't have a clue on what the defense is going to do. Another question I have is that you have a lot of knowledge. Can you keep it to yourself? In other words, if it doesn't come out from the witness chair, you can't give your own opinions about it and it sounds to me like that might be very difficult for you. I don't mean that insulting.

MR. BROWN: Judge, I'm going to object to that. If --

THE COURT: The objection is?

MR. BROWN: The objection is that's a misstatement. If he has a personal knowledge of PTSD, he can use that toward his deliberations concerning this case. If he hears a particular witnesses testify about PTSD and what their testimony is, he can obviously tell the jurors, well, I believe he's credible because he talked about x, y and z or I believe he's not credible because he didn't talk about x, y, and z and

10

that's going to be based on his personal experiences. So he can take his personal experiences back there.

Again, we're talking about specific evidence in this case and we're going down a trail of evidence that we don't know if it's going to be presented or see if it's going to be.

THE COURT: I'll overrule your objection. Go ahead finish your answer -- your question.

MR. MONROE: If I didn't state it accurately, each individual juror is a part of their own personal environment.

PROSPECTIVE JUROR: Sure.

MR. MONROE: And that's part of the process. You're absolutely entitled to it. What I meant was that you can't share it. Do you see what I am saying? You can't give your knowledge to it. If it didn't come from the witness stand, it's not appropriate for you to share anything you know with the other jurors. That's what I meant. Not that it can't be a factor for you --

PROSPECTIVE JUROR: I understand.

MR. MONROE: -- but it can't be for somebody else. And I don't know that I'm asking you to do something, but for some people, that might be saying, you might as well tell me I can't breathe.

PROSPECTIVE JUROR: Well, given the fact that it hasn't come up yet, several years ago, I could have definitively said, no problem because I was a different person then, but I've been trained and dealt with this issue. It would be very hard. I'm not going to lie to you about that. If I know something and it has a bearing, it would be very hard not to say something.

MR. MONROE: You would have to make a decision based solely on what you hear from that witness stand and

11

nothing else. Can you do that? You're the only one that can answer the question. There is no shame in either answer.

PROSPECTIVE JUROR: Well, since I have nothing to go on, I could just throw out a yes or no. Truth is that based on what I hear, it's really going to determine what did I know because they said something or didn't say something. So especially if somebody doesn't say something that should have been said, that falls into that. That's why it's hard. If I know it, I know it. And that's a -- I can try but --

MR. MONROE: The risk is there?

PROSPECTIVE JUROR: The risk is there.

MR. MONROE: I don't have any further questions of this witness.

MR. BROWN: I have no further questions.

THE COURT: Okay. If you'll have a seat.

PROSPECTIVE JUROR: Yes, sir.

THE COURT: We'll wait to the end for any other challenges.

A trial court should grant a challenge for cause only if a potential juror's statements indicate that the jurors view would prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and oath. Hughes v. State, 878 S.W.2d 142 (Tex Cr.App1993); Cockrum v. State 758 S.W. 2d 577(Tex. Cr.App1988 cert den 489U.S. 1072 1989).

The Code of Criminal Procedure allows both the State and Defense to challenge

12

for cause when the challenging side can show the juror is incapable or unfit to serve on the jury. Tex. Code Crim. Proc. Ann art. 35.16). In the present case. Juror Burns did not give any answer that would support a strike for cause.

In addition State attorney Mr. Monroe sought a commitment question from Juror Burns as to PTSD. As a general rule it is improper to ask a commitment question during voir dire because it would amount to an improper attempt to bind a juror. Allridge v. State, 850 S.W. 2 471 (Tex.Cr App 1991), cert denied 510 U.S. 831 (1983) In Standefer v. State, 59 S.W. 3d 177 (Tex.Cr.App 2001) this court set forth a three prong test to determine if a commitment question is improper. The court must first determine if one of the possible answers would give rise to a valid challenge for cause. Id at 182. In the Voir Dire examination of Juror Burns he did not submit an answer to Mr. Monroe's commitment question on PTSD that would support a finding under the first prong test in Sandefer.

As a result thereof it was harmful error to strike for cause Juror #3 Lee Burns.

### *ISSUE NO. 2* (RESTATED)

The Appellant was not provided adequate assistance of counsel.

Appellant's Trial Counsel failed to file a Motion to Suppress with regard to the recorded interview of Appellant. At the time Appellant gave the interview he was intoxicated according to the testimony of the officer who conducted the interview. (RR3-52). See Wood v. State, 18 S.W. 3d 642, Tex.Cr.App, 2000) The

13

recorded interview was highly prejudicial to the Appellant.

In addition while the appellant was testifying a court Bailiff administered unknown medication to the appellant. Trial Counsel failed to explore the effects of the medication on the mental capacity of the Appellant to testify. State v. Murphy, 56 Wn 2d 761 (Washington 1960) although not a Texas case reversed jury verdict based upon Defendant being medicated during testimony.

The Defendant has the right to the effective assistance of counsel at trial. U.S. Const. amends VI and XIV. TEX CONST. art I, sec 10: Powell v. Alabama 287 U.S. 45 (1932). Counsel must act within the range of Competence demanded of counsel in criminal cases. McMann v. Richardson 262 F3d 336 (5th Cir. 2001), cert denied 535 U.S. 1120 (2002). The standard for review for ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984) In Strickland the U.S. Supreme Court established that the Defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. ID at 668. Courts have ruled that the failure to file and obtain rulings on pre-trial motions is ineffective assistance of counsel. See Sanders v. State, 715 S.W. 2d 771 (Tex. App.-Tyler 1986, no pet) Cooke v. State, 735 S.W.2 928 (Tex. App-Houston {14th Dist} 1987, pet ref'd; Perkins v. State 812 S.W.2d 326 Tex Crim App.1991).

Additionally, the failure of trial counsel to inquire into the medication being administered to appellant while he testified constitutes ineffective assistance of

14

counsel. Baldwin v. State, 668 S.W.2d 763 Tex App-Houston {1ˢᵗ Dist.} 1984, no pet.; Ruth v. State 522 S.W 2d 517 (Tex Crim App 1975.

Although the Court of Appeals opinion states that Appellant requested the medication there is no supporting testimony in the record as to this finding. The medication was administered to appellant by the bailiff and not a competent medical provider. Appellant's counsel failed to address any of this while questioning the Appellant.

The result of trial counsel's failure to file and obtain a hearing and rulings on a Motion to Suppress, and to inquire into the type of medication and its effects that was being administered to appellant while he testified falls within the spectrum of deficient performance by the trial counsel and cannot be supported by any sound trial strategy. Such deficiencies resulted in the Appellant being prejudiced in the trial of this cause.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully requests that this Court reverse the judgments of the trial court and render a judgment in the Appellants favor. Alternatively, Appellant prays that this court reverse and remand the case in its entirety to the trial court for a new trial on the guilt and innocence and sentencing phases of the case.

15

Respectfully submitted,

Law Offices of Gary F. Churak P.C.
14310 Northbrook, Ste. 210
San Antonio, Texas 78232
(210) 491-4443
Fax (210) 491-4446

By:_____
Gary F. Churak
State Bar No. 04245500
Attorney for Appellant

## CERTIFICATE OF COMPLAINCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 3709 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was sent this 9th day of December 2015 to Scott Monroe, Kerr County District Attorney, 402 Clearwater Paseo, Kerrville, Texas 78028 pursuant to the Texas Rules of Appellate Procedure.

_____
Gary F. Churak

APPENDIX: Court of Appeals Opinion



# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00560-CR

Vernon Lee TRAVIS, III,
Appellant

v.

The STATE of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B13637
Honorable Stephen B. Ables, Judge Presiding

Opinion by:  Rebeca C. Martinez, Justice

Sitting:  Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  November 10, 2015

AFFIRMED

Vernon Lee Travis, III appeals his conviction for burglary of a habitation with intent to commit aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 30.02 (West 2011). We overrule Travis's issues on appeal and affirm the trial court's judgment.

## BACKGROUND

On September 5, 2013, two men wearing bulletproof vests kicked in the front door and entered the home located at 347 Madrona, Kerrville, Texas with their handguns drawn. The male occupant locked himself inside a bedroom, while the female occupant and her child remained in

the living room with one of the gunmen. Travis banged on the bedroom door yelling for the man to come out and pay the money he owed "Big Mike." The man fired a shot through the bedroom door, and Travis fired two to three shots through the door into the bedroom. Travis and the other gunman then fled in a blue vehicle, but were intercepted by a DPS trooper who gave chase. After throwing the guns out the window, they abandoned the vehicle and ran into the woods. Travis surrendered to the officers. The officers recovered the two handguns and apprehended the other suspect, Timothy Scott Pugh. Both men were indicted for burglary with intent to commit aggravated assault with a deadly weapon.

After the jury was impaneled in Travis's case, he entered a plea of guilty to the charged offense. After the State presented its evidence, the jury was instructed to return a verdict finding Travis guilty, which it did, and trial then proceeded into the punishment phase before the jury. Several witnesses testified during punishment, including the two complainants, Travis and members of his family, and Dr. John Roache, a psychiatrist. Dr. Roache reviewed Travis's recent medical records diagnosing him with post-traumatic stress disorder ("PTSD") and related polysubstance use disorder and drug induced mood disorder and testified that he agreed with the diagnosis based on his evaluation of Travis and Travis's account of his military service in Iraq. The jury recommended punishment be assessed at 55 years' imprisonment, and the trial court imposed a sentence in accordance with the jury's verdict. Travis now appeals.

## ANALYSIS

On appeal, Travis raises two issues, asserting that (1) the trial court erred in excusing Venire Member No. 3 for cause, and (2) his trial counsel rendered ineffective assistance.

### Challenge for Cause

During general voir dire questioning concerning the potential jurors' ability to consider the full range of punishment, the panel was asked whether anyone had any knowledge or experience

with PTSD. Venire Member No. 3 identified himself as a military veteran and stated that he s...

as a veterans' service officer and has "dealt with a lot of vets." When asked by defense couns?

give his definition of PTSD, Venire Member No. 3 stated that PTSD arises when an individual

"faced a trauma beyond their mind's ability to easily deal with," and that it is not limited to ve...

although they are the largest category of sufferers. Upon further questioning by counsel ?

Member No. 3 stressed the importance of a person with PTSD receiving appropriate supper

individualized treatment, and stated that "secondary conditions" such as depression, also...

and substance abuse may occur when a person does not receive support and treatment.

Venire Member No. 3 was then questioned individually at the bench on the issue of

The prosecutor asked, "If you have a situation where you were presented with evidence ...

could you ever entertain a sentence of 99 years?" Venire Member No. 3 answered. ...

Defense counsel objected that the question constituted an improper commitment ques...

court acknowledged that no evidence had been presented yet and that no one could know ...

PTSD would come up during trial, but overruled the objection because there had a...

extensive discussion about PTSD with the jury panel. Venire Member No. 3 sta...

understood that no assumptions could be made that evidence of PTSD would be presen...

acknowledging that "we haven't received any information that there has been a diagnos...

is any particular thing." Venire Member No. 3 went on to express his feelings that "[i]f ...

a factor" there should be an option for treatment "even if punishment is required."

The individual questioning by the State then turned to whether Venire Member No...

keep his knowledge of PTSD to himself and not inform the other jurors about PTSD beyond any

evidence of PTSD that might be presented at trial. Defense counsel objected that the prosecutor's

question misstated the law because a juror is allowed to use his personal experiences in his

deliberations. The trial court overruled the objection and instructed the prosecutor to re-state his question. The following exchange then occurred:

> PROSECUTOR: If I didn't state it accurately, each individual juror is a part of their own personal environment.
>
> PROSPECTIVE JUROR: Sure.
>
> PROSECUTOR: And that's part of the process. You're absolutely entitled to it. What I meant was that you can't share it . . . If it didn't come from the witness stand, it's not appropriate for you to share anything you know with the other jurors. That's what I meant. Not that it can't be a factor for you - -
>
> PROSPECTIVE JUROR: I understand.
>
> PROSECUTOR: - - but it can't be for somebody else. And I don't know that I'm asking you to do something, but for some people, that might be saying, you might as well tell me I can't breathe.
>
> PROSPECTIVE JUROR: Well, given the fact that it hasn't come up yet, several years ago, I could have definitively said, no problem because I was a different person then, but I've been trained and dealt with this issue. It would be very hard. I'm not going to lie to you about that. If I know something and it has a bearing, it would be very hard not to say something.

The prosecutor then inquired of Venire Member No. 3 whether he could set aside his personal knowledge of PTSD in the following exchange:

> PROSECUTOR: You would have to make a decision based solely on what you hear from that witness stand and nothing else. Can you do that? You're the only one that can answer the question. There is no shame in either answer.
>
> PROSPECTIVE JUROR: Well, since I have nothing to go on, I could just throw out a yes or no. Truth is that based on what I hear, it's really going to determine what did I know because they said something or didn't say something. So especially if somebody doesn't say something that should have been said, that falls into that. That's why it's hard. If I know it, I know it. And that's a - - I can try but - -
>
> PROSECUTOR: The risk is there?
>
> PROSPECTIVE JUROR: The risk is there.

The questioning of Venire Member No. 3 ended there, and the court indicat[...] challenges could be raised at the end of individual voir dire. When the court asked f[...] challenges, the State challenged Venire Member No. 3 for cause based on "his inability to co[...] that he would not inject personal knowledge into the equation." Defense counsel objected, arg[...] that "just because he has past experiences and knowledge of it [PTSD] doesn't nec[...] disqualify him as a juror. He never came out and said, I'm not going to do that, I am go[...] this, or I am going to do that. He said I would try and I would tell you that I'm going [...] but I can't tell you for sure. He hasn't heard any of the facts. He doesn't know the evi[...] he can't sit here and tell us what he is or is not going to do." The court then sustained [...] challenge for cause and excused Venire Member No. 3.

On appeal, Travis asserts the trial court abused its discretion in excusing Ven[...] No. 3 for cause. Specifically, Travis argues that Venire Member No. 3 "did not give a[...] that would support a strike for cause" by the State under article 35.16. *See* TEX. CODE C[...] ANN. art. 35.16 (West 2006). Article 35.16 of the Code of Criminal Procedure provi[...] grounds on which the State may challenge a potential juror for cause, including a bias [...] in favor of the defendant or a bias or prejudice against the applicable law. TEX. CODE C[...] ANN. art. 35.16(a)(9), (b)(3). "The test is whether a bias or prejudice would substan[...] the venire member's ability to carry out the juror's oath and judicial instructions in a[...] with the law." *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010). The prop[...] the challenge for cause has the burden to establish that the venire member unders[...] requirements of the law and cannot overcome his or her prejudice well enough to follow the law. *Id.* (noting the law must be explained to the venire members and they must be asked whether they can follow that law, regardless of their personal views). The trial court's ruling on a challenge for cause is reviewed with considerable deference to the court's position in evaluating the ve[...]

member's demeanor and responses, and may be reversed only for a clear abuse of discretion. *Id.*; *Gardner v. State*, 306 S.W.3d 274, 295-96 (Tex. Crim. App. 2009). In reviewing the court's ruling, we look at the entire record of voir dire to determine whether the evidence is sufficient to support the ruling. *Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011).

Here, the State explained the law requiring a juror to refrain from discussing his own personal knowledge or experiences with the other jurors during deliberations, and asked Venire Member No. 3 whether he could follow that law. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). The record, as recited above, shows that Venire Member No. 3 vacillated in his answer to the question of whether he could refrain from sharing his personal expertise with PTSD with the other jurors. Venire Member No. 3 acknowledged his understanding of the law, and stated that several years ago he could have followed it with "no problem." But, Venire Member No. 3 went on to state that due to his training and experience dealing with PTSD, he now felt "it would be very hard," explaining that, "If I know something and it has a bearing, it would be very hard not to say something." In response to further questioning about whether he could base his decision solely on the evidence presented at trial, Venire Member No. 3 reiterated that it would be hard, "especially if somebody doesn't say something that should have been said . . . If I know it, I know it." Venire Member No. 3 stated that he could try, but ultimately concluded, "[t]he risk is there." When a venire member gives responses that are "vacillating, unclear, or contradictory," we give particular deference to the trial court's ruling on the challenge for cause. *Davis*, 329 S.W.3d at 807; *Gardner*, 306 S.W.3d at 296. Applying the highly deferential standard of review to the voir dire record, we cannot say that the trial court clearly abused its discretion in granting the State's challenge for cause against Venire Member No. 3 on the ground that he could not overcome his

bias and follow the applicable law. *See Davis*, 329 S.W.3d at 807. Therefore, we overrule Travis's first issue.[1]

### Ineffective Assistance of Counsel

Travis asserts his trial counsel rendered ineffective assistance by (i) failing to file a pre-trial motion to suppress his videotaped statement to police, and by (ii) failing to inquire into the type of medication administered to him before his testimony. He argues he was prejudiced by such deficiencies because he appeared to be intoxicated on the videotape and the effects of the medication were not explored.

To establish ineffective assistance, Travis has the burden to prove that his trial counsel's performance was deficient and that it prejudiced his defense, in that there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). Travis must provide a sufficient record that affirmatively demonstrates ineffective assistance by a preponderance of the evidence, and overcomes the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Lopez v. State*, 343 S.W.3d 137, 142-43 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To establish deficient performance, Travis must show that counsel's performance fell below an objective standard of reasonableness and must rebut the presumption that counsel's decisions were based on sound trial strategy. *Thompson*, 9 S.W.3d at 812-13. In evaluating counsel's performance, we do not focus on isolated acts or omissions, but review the totality of counsel's representation without the benefit of hindsight. *Lopez*, 343 S.W.3d at 143;

---

[1] In his brief, Travis also argues the State's question about whether Venire Member No. 3 would be able to consider the maximum punishment if the defendant suffered from PTSD was an improper commitment question. *See Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001). However, the State's challenge for cause was not based on this ground.

*Thompson*, 9 S.W.3d at 813. Failure to prove either prong of the *Strickland* test will defeat an ineffective assistance claim. *Perez*, 310 S.W.3d at 893; *Thompson*, 9 S.W.3d at 813.

Although Travis filed a motion for new trial raising ineffective assistance of counsel, no evidentiary hearing was held; therefore, the record was not developed as to the reasons underlying counsel's conduct. *See Thompson*, 9 S.W.3d at 813. Travis's motion merely alleged that, "[d]efendant was afforded ineffective assistance of counsel." No specific complaints were raised regarding counsel's performance and the motion was not supported by any affidavits. The trial court sustained the State's written objections to the motion and denied it on procedural grounds.

In the face of a record that is silent as to the reasons underlying trial counsel's conduct, we conclude that Travis has failed to overcome the strong presumption that counsel rendered effective assistance. *See id.* at 812-13; *see also Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012). With respect to the videotaped interview, the record shows that defense counsel did raise hearsay and other objections to certain portions of the videotape, which were overruled. The failure to file a pre-trial motion to suppress the videotape could have been a strategic decision based on Travis's defense that he suffered from PTSD and the secondary conditions of alcoholism and polysubstance abuse, as evidenced by his condition on the videotape. In addition, in view of Travis's guilty plea, he has not shown how he was prejudiced by the absence of a pre-trial motion to suppress the admission of the videotape.

With respect to the medication administered to Travis at trial, the record shows that it was Travis who requested the bailiff give him the medication during his punishment phase testimony, and that defense counsel then asked Travis about the medication in front of the jury. Travis answered that he was "not 100 percent [sure] of what the name of it is." When his counsel asked what the purpose of the medication was, Travis answered that it "[j]ust calms me down." Travis testified that he first sought counseling through the Veterans Administration a few months after

the burglary occurred. He was diagnosed with PTSD on April 3, 2014, one month before trial, and was placed on Vistaril for PTSD and Zoloft for drug-induced mood disorder and depression. Contrary to the complaint on appeal, defense counsel did inquire about the medications' effects, and Travis stated that they help him think more clearly and handle his emotions better. Therefore, the record refutes Travis's argument that his counsel's performance was deficient because he failed to inquire into the medication and its effects.

Based on the foregoing reasons, we overrule Travis's issues on appeal and affirm the trial court's judgment.

Rebeca C. Martinez, Justice

DO NOT PUBLISH